# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAVONDA J. SINGLETON,   )<br>   )<br>      Plaintiff,   )<br>   )<br>vs.   )<br>   )<br>MICHAEL J. ASTRUE,   )<br>Commissioner of the Social Security   )<br>Administration,   )<br>   )<br>      Defendant.   ) | Case No. 09-cv-425-TLW |

## OPINION AND ORDER

Plaintiff Lavonda J. Singleton, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), requests judicial review of the decision of the Commissioner of the Social Security Administration denying her applications for disability benefits under Titles II and XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. # 7). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

## Review

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security

regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The

evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## Background

Plaintiff was born January 17, 1961 and was 48 years old at the time of the Administrative Law Judge's ("ALJ") final decision on January 20, 2009.[1] (R. 62). Plaintiff has an eighth grade education. (R. 62, 159). Plaintiff's prior work history consists of a cashier/cafeteria attendant for a cafeteria (1992-2007). (R. 63, 156). Plaintiff alleges a disability onset date of January 26, 2007. (R. 63, 155).

At the December 17, 2008 hearing, plaintiff testified she is approximately 5'4" tall, weighing 300 pounds. (R. 62). She claimed to have been in special education classes in both kindergarten and first grade. (R. 63).

Plaintiff claimed she is only able to sit approximately 20 to 30 minutes at a time, claiming her hips begin to hurt and she must move, and her legs begin to swell and ache. (R. 64). She claimed she must "walk around the kitchen" to help relieve her "problem with sitting," and could only walk approximately 20 to 30 feet, stating her ankles swell too. Id. She continued to describe "a real sharp pain" in her back when she walks or stands. (R. 65). She claimed to be unable to squat or bend, stating her back and legs are the problem. Id.

She stated her hands go numb and swell daily, no matter what she does or does not do.

---

[1] Plaintiff's application for disability was denied initially and upon reconsideration. (R. 79-80, 95-97, 81-82, 98-100). A hearing was held before ALJ Richard J. Kallsnick December 17, 2008, (R. 58-78), in Tulsa, Oklahoma. By decision dated January 20, 2009, the ALJ found that plaintiff was not disabled at any time through the date of the decision. (R. 5-16). On May 4, 2009, the Appeals Council denied review of the ALJ's findings. (R. 1-3). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. The adjucated time frame for this claim is March 14, 2007 to January 20, 2009.

3

(R. 66). Plaintiff claimed these problems with her hands make her drop things daily, up to five times each day. Id. She testified that she wears braces on her wrists "sometimes" and they help alleviate the numbness, but do not eliminate it. (R. 67). She claimed her doctors limited her to lifting only five (5) pounds.[2] Id.

Plaintiff claimed reaching over her head make her dizzy and sent sharp pains into her hands. (R. 68). She also claimed that muscle spasms in her legs make sleeping difficult, stating she is only able to sleep a total of three to four hours a night. (R. 69). When asked about what household chores she is able to perform, plaintiff stated she sweeps the floor, washes dishes, and folds clothes. She claimed she must take frequent breaks. (R. 69-70). The ALJ asked plaintiff what she perceived to be her most severe impairments that prevent her from working. She responded by stating "my hands and my legs and my knees." (R. 71).

The record contains several medical records, ranging in date from May, 1998 to February, 2008, including those from plaintiff's treating physician, medical testing, and state consultative examinations. (R. 191-201, 202-210, 211-225, 226-232, 233-363). The records show plaintiff was diagnosed with arthritis, lupus, back pain, carpal tunnel syndrome, and hypothyroidism. (R. 203, 211-214, 230, 236, 238, 242-244, 245, 247-248, 253, 257, 263, 269-270, 277, 279, 314-316, 325-327).

Plaintiff was examined by one (1) agency consultative examiner, William Grubb, M.D., on May 22, 2007. After examination of plaintiff, Dr. Grubb asserted the following impression:

1. Osteoarthritis of knees and ankles by history and exam;
2. Venous insufficiency with substantial bilateral pedal edema;[3]
3. Obesity;

---

[2] There is no support in plaintiff's record for this subjective limitation on lifting.
[3] Pedal edema is defined as an excessive accumulation of fluid in the feet. See http://www.shoestring-graphics.com/CP2020/medtech/glossary/er.htm

4. Remote history of seizure disorder, no seizures since age 16; [and]
5. Possible bilateral carpel tunnel syndrome, probably improved with soft braces.

(R. 213). Dr. Grubb mentioned in his examination notes plaintiff's grip strength was "5/5 bilaterally. … Dexterity of gross and fine manipulation appeared normal by the ability to manipulate clothing and a door." (R. 212). He noted plaintiff's gait "was normal in terms of speed, safety and stability…," and noted that due to her obesity, balance appeared to be an "increased problem" while on her toes or walking heel-to-toe, although she was able to do both tests without assistance. Id.

An agency physical RFC was submitted on June 13, 2007 by Thurma Fiegel, M.D. (R. 218-225). Plaintiff was given a RFC as follows:

> Occasionally lift and/or carry (including upward pulling) 20 pounds;
> Frequently lift and/or carry (including upward pulling) 10 pounds;
> Stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday;
> Sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and
> Push and/or pull (including operation of hand and/or foot controls) – unlimited, other than as shown for lift and/or carry.

(R. 219). Dr. Fiegel summarized Dr. Grubb's findings and added a note that plaintiff was not being treated for lupus and had no evidence of lupus "at present." Id.

Luther Woodcock, M.D., completed a Case Analysis on October 4, 2007, stating he reviewed all of the medical evidence in the file and he affirmed Dr. Fiegel's June 13, 2007 physical RFC. (R. 233).

There are no statements from plaintiff's treating physicians delivering an opinion on her level of physical capabilities.

**Procedural History**

Plaintiff alleges her disabling impairments are "lupus, obesity, seizure disorder, carpal tunnel, hypothyroid." (R. 155). In assessing plaintiff's qualifications for disability, the ALJ first stated plaintiff met the insured status requirements of the Act through December 31, 2011. Next, he determined at step one of the five step sequential process that plaintiff had not been engaged in substantial gainful activity since January 26, 2007, her alleged onset date. (R. 10). At step two, the ALJ found plaintiff to have the severe impairments of obesity and chronic venous insufficiency.[4] Id. He mentioned that plaintiff claimed lupus, seizure disorder, carpal tunnel syndrome, and hypothyroid as impairments, but found, after a review of the record, no "laboratory signs, symptoms or laboratory findings" of an impairment "which would impose more than a minimal limitation" on plaintiff's ability to perform basic work activities. The ALJ therefore found those impairments to be non-severe. (R. 10-11).

At step three, the ALJ determined plaintiff's impairments did not meet the requirements of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.925, and 416.926). (R. 11).

Before moving to the fourth step, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform "the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." Id.

At step four, the ALJ determined that plaintiff was capable of "performing past relevant work as a cashier and drink attendant." (R. 14). Since the plaintiff did not meet her burden of

---

[4] Chronic venous insufficiency is defined as "a condition in which the veins have problems sending blood from the legs back to the heart."
See http://www.nlm.nih.gov/medlineplus/ency/article/000203.htm.

proof through step four of the five step sequential evaluation process, the ALJ did not need to proceed to step five. Williams, 844 F.2d at 750.

The ALJ concluded that plaintiff was not disabled under the Act from January 26, 2007, through the date of the decision. (R. 15).

## Issues Raised

Plaintiff's allegations of error by the ALJ are as follows:

1. The ALJ failed to make a proper determination at steps 4 and 5 of the sequential evaluation process; and
2. The ALJ failed to perform a proper credibility determination; and
3. The ALJ failed to perform a proper determination at steps 2 and 3 of the sequential evaluation process.

(Dkt. # 16 at 1-2).

## Review of Issues

Plaintiff first alleges the ALJ failed to perform a proper determination at steps four (4) and five (5) of the sequential evaluation process, specifically stating "the ALJ completely ignored [plaintiff's] diagnosis of arthritis throughout his analysis at steps 2 and 3. [T]he ALJ included no manipulative limitations or postural limitations, even though the record and [plaintiff's] testimony substantiate limitations in [plaintiff's] ability to stand, reach, grip, handle, and use her hands and fingers." (Dkt. # 16 at 2). Plaintiff also states the ALJ's determination at steps four (4) and five (5) fails because the ALJ did not "ascertain the precise functional limitations of [plaintiff's] past relevant work," claiming he failed to perform the three pronged Winfrey analysis. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). Id. at 3. The Court agrees.

7

Plaintiff's diagnoses with lupus and osteoarthritis are well documented in the record. (R. 203, 230, 236, 238, 242, 244, 245). The ALJ is required to include non-severe limitations in his RFC determination. See 20 C.F.R. §§ 404.1545; 416.945. "[T]he ALJ was still required to give consideration to the disorder because, in determining RFC, an ALJ must 'consider the limiting effects of all [the plaintiff's] impairment(s), even those that are not severe[.]'" Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010) (quoting 20 C.F.R. §§404.1545(e), 416.945(e)).

In the explanation of his RFC, the ALJ summarized plaintiff's hearing testimony, the consultative examination by Dr. Grubb, the RFC completed by the non-examining agency physician, OSU medical records, and plaintiff's treating physician, Margaret Stripling, D.O. (R. 11-13). He failed to explain the impact of plaintiff's non-severe impairments on her ability to perform substantial work. The ALJ needs to incorporate limitations caused by her non-severe limitations upon remand.

> At the hearing, the vocational expert described plaintiff's past work as follows:
>
> She worked at a cafeteria, and she actually had two assignments. She described being a cashier. This is a semi-skilled level, an SVP of 3, and light exertion, and then she also served as a cafeteria attendant. This is an unskilled level, an SVP of 2, and light exertion.

(R. 73). In his decision, the ALJ restated testimony from the vocational expert regarding plaintiff's past employment:

> [Plaintiff's] past work activity has been as a cashier, semi-skilled, with an exertional level of light and a skill level of 3; and as a cafeteria attendant, unskilled, with an exertional level of light and a skill level of 2.

(R. 14). According to Winfrey, the practice of "delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged." Winfrey, 92 F.3d at 1025. While the ALJ may rely on information from the

vocational expert at step four, he must make his own evaluation of plaintiff's ability to perform past relevant work. Id. This needs to be corrected upon remand.

Plaintiff next alleges the ALJ failed to perform a proper credibility determination. In light of the undersigned's findings above, plaintiff's credibility will need to be reevaluated as well.

Plaintiff alleges the ALJ failed to perform a proper determination at steps two (2) and three (3) of the sequential evaluation process, stating the ALJ failed to determine the severity of plaintiff's limitations at step two, which resulted in his RFC determination being flawed at step three. Plaintiff claims "[i]gnoring arthritis as an impairment at steps 2 and 3 fatally flawed the ALJ's determinations at steps 4 and 5, as well as his evaluation of [plaintiff's] credibility." (Dkt. # 16 at 9-10). Again, in light of the flawed step four process, steps two and three will need to be reevaluated.

## Conclusion

The decision of the Commissioner finding plaintiff not disabled is hereby REVERSED and REMANDED for further proceedings that are consistent with this Opinion and Order.

SO ORDERED this 18th day of January, 2010.

_____
T. Lane Wilson
United States Magistrate Judge